UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robyn White,
      Plaintiff

      v.                          Case No. 19-cv-1059-SM
                                  Opinion No. 2020 DNH 124

N.H. State Troopers James Roe, John Roe,
And Haden Wilber; Strafford County
Corrections Sergeants Cormier and
Gillaen Nadeau, and Corrections Officer
Shawntell Clemmer; Thomas Lydon, M.D.
and Seacoast Emergency Physicians,
      Defendants

**O R D E R**

Robyn White brings this civil rights action seeking damages for alleged violations of various constitutionally protected rights.  See generally 42 U.S.C. § 1983.  She also asserts state law claims against some defendants.  New Hampshire State Trooper Haden Wilber moves to dismiss the two constitutional claims brought against him, asserting that neither states a viable cause of action.  See Fed. R. Civ. P. 12(b)(6).  That motion is necessarily denied.

**Standard of Review**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set out in the

complaint and indulge all reasonable inferences in favor of the
pleader." S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).
Although the complaint need only contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the
essential elements of a viable cause of action and "contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face," Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (citation and internal punctuation
omitted).

In other words, "a plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007).  Instead, the facts alleged in the
complaint must, if credited as true, be sufficient to "nudge[]
[plaintiff's] claims across the line from conceivable to
plausible." Id. at 570.

Here, the factual allegations pled in plaintiff's Second
Amended Complaint (document no. 26) plainly set forth viable and
plausible claims that Trooper Wilber violated her
constitutionally protected rights.

**Factual Backgrounds**

Accepting the allegations of White's complaint as true – as the court must at this juncture – the relevant facts are as follows.  On February 20, 2017, White was driving north on Interstate 95 when New Hampshire State Trooper Haden Wilber pulled her over because snow was obscuring one of her car's taillights, ostensibly in violation of N.H. Rev. Stat. Ann. ("RSA") 265:79-b.  That statute makes it unlawful to "drive[] a vehicle negligently" or "in a manner that endangers or is likely to endanger" other people or property.

White alleges that during the course of the roadside detention, Trooper Wilber searched her purse, without her consent or legal justification, and in violation of the Fourth Amendment.  Wilber discovered what he believed to be heroin residue and called for backup.  After examining White's driver's license, Wilber learned that she was a resident of Avon (Franklin County), Maine, and he telephoned the Franklin County Sheriff's Department.  White alleges that the person who answered the phone had never heard of White, but recounted to Wilber the story of a Maine resident who, in 2016, had secreted oxycodone on their person while traveling somewhere in New Hampshire.  Based upon that odd and vague story, Wilber is alleged to have suspected that White, too, was attempting to

conceal controlled substances on or in her body.  White was
arrested and transported to Rockingham County Jail.

Next, says White, Wilber shared his "suspicions" about
White secreting controlled substances somewhere in her body with
defendant James Roe, who transported White to the Strafford
County Jail to undergo a full-body scan.  All the while, White
says she vehemently denied having any controlled substances on
or in her body.  Nevertheless, when she arrived at the jail,
White says defendant Shawntell Clemmer (a corrections officer)
forced her to undergo a full-body scan – again, absent consent,
probable cause, a search warrant, or other lawful justification.
Clemmer claimed to have observed two "abnormalities" in White's
intestinal region, so White was returned to the Rockingham
County Jail where she was held while officers waited for
"something to pass."  Nothing did.  As an aside, the court notes
that White also alleges that despite Clemmer's claims about
having observed two "abnormalities" on White's scan, the booking
notes from the Rockingham County Department of Corrections
report that White was subjected to a full-body scan on February
10, 2017, at 6:27 pm and "No Foreign Objects [were] Detected."

Earlier on February 10, 2017 – the day of her arrest –
White's bail was set at $250 for possession and transportation

of a controlled substance.  But, says White, Wilber intervened and added an additional charge: "delivery of articles prohibited."  That charge was, according to the amended complaint, based upon Wilber's continued belief (despite the lack of supporting evidence) that White had somehow secreted controlled substances in her body and "delivered" those drugs to herself while being held in jail.  White alleges that Wilber fabricated that fanciful story and conveyed it to the prosecutor, who then relied upon Wilber's false testimony to persuade the court to significantly increase White's bail.  As a consequence, on February 13, White's bail was increased to $5,000.

White could not afford to post bail and was, therefore, detained.  She was returned to Rockingham County Jail.  By February 21 – eleven days after her arrest – after nothing had "passed" and no drugs were discovered on her body or in her possession, White's bail was reduced to $250.  Nevertheless, because of the still-pending "delivery of articles prohibited" charge, the court ordered that, as a condition of White's bail, she undergo a second body scan before being released.  She dutifully complied with the court's bail condition, submitted to the additional body scan (which revealed no drugs secreted

within her body), and was then transferred back to Rockingham
County Jail.

At that point, White, no doubt, thought she would finally
be released from custody.  That was not the case.  She claims
another defendant informed her that a search warrant application
had been filed and was pending (based, again, upon Wilber's
allegedly fabricated tale of White having secreted drugs into
the jail inside her body).  White says she was told that the
warrant would require her to submit to a vaginal and rectal
examination to search for concealed drugs (recall that this was
now nearly two weeks after her arrest, an uninterrupted period
of detention, and two body scans, during which time no drugs
were found).  White was informed that, despite having complied
with the court's order to undergo a second full-body scan, she
was not free to go.  The options, as presented to her, were
either "consent" to the body cavity search or wait for the
search warrant, which she was told could take a considerable
amount of time.  Given the limited choices presented to her,
White reluctantly acquiesced, agreed to submit to the body
cavity search, and was taken to Wentworth Douglass Hospital.
There, a male physician (also a defendant), assisted by a nurse,
performed an invasive pelvic and rectal examination of White.
No drugs were found.

The following day (February 22), the prosecutor withdrew
the "delivery of articles prohibited" charge against White.  The
day after that (February 23) – thirteen days after her arrest –
White was finally released from custody.

Parenthetically, the court notes that White also alleges
that on February 15, 2017, she was transferred to Valley Street
Jail and required to submit to a drug test.  That test was
negative.  So, despite two full-body scans, a drug test, and an
invasive body-cavity search, no drugs were ever found on or in
White's body.  The only controlled substance found in her
possession was the trace heroin discovered – unconstitutionally,
she says – by Wilber in her purse.

According to White, absent Wilber's pretextual motor
vehicle stop and unconstitutional search of her purse, none of
the foregoing would have occurred.  Moreover, even if the stop
and search were legitimate, Wilber's (allegedly) fabricated tale
of White having "secreted" drugs in her body proximately caused
her to suffer significant injury: she was unable to post the
$5,000 bail, spent thirteen days in jail, and was subjected to
two full-body scans, a drug test, and an invasive body cavity
search – all of which revealed absolutely no evidence of any
illegal conduct.  And, adding insult to injury, White says

7

Wentworth Douglass Hospital sent her a bill for the "emergency
services" it provided to her – that is, the body cavity search
that was performed at defendants' insistence.

## Discussion

Against that factual backdrop – which, again, the court
must accept as true - Wilber contends that neither of White's
two claims against him states a viable cause of action.  He is
mistaken.

### I.   Count One.

In count one of her second amended complaint, White alleges
that Wilber violated her constitutionally protected rights by
making a pretextual stop of her motor vehicle.  He continued
that assault on her constitutional rights by searching her purse
without consent, probable cause, a warrant, or other lawful
authority.  As the court reads the second amended complaint, the
search of White's purse (and discovery of heroin residue)
prompted Wilber to arrest her.  That is to say, White was
arrested after the (allegedly unconstitutional) search.
Consequently, based upon the facts alleged, Wilber's search of
White's purse cannot be justified as having been made "incident
to arrest," nor was it an "inventory search" of White's personal
belongings.

Whether Wilber had a lawful basis for the initial motor
vehicle stop, and whether he had a lawful basis for the search
of White and her purse are issues that may (or may not) lend
themselves to resolution on summary judgment, when the factual
record is more fully developed.  At this juncture, however, the
Second Amended Complaint adequately and plausibly alleges facts
sufficient to state a viable claim that, at a minimum, Wilber
violated White's Fourth Amendment rights when he stopped her
vehicle and searched her purse without lawful authority to do
so.  See generally Arizona v. Gant, 556 U.S. 332 (2009).  See
also Wyoming v. Houghton, 526 U.S. 295, 300 (1999) (discussing
the "automobile exception" to the warrant requirement); United
States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014) (same).


II.  Count Two.

In count two of her amended complaint, White alleges that
"Wilber did knowingly and intentionally provide false testimony
and/or evidence against the plaintiff to secure the additional
charge of 'delivery of articles prohibited.'  The evidence
fabricated was the claim that plaintiff had drugs secreted in
her person when that was false."  Second Amended Complaint at
para. 51.  White alleges that Wilber's false testimony/evidence
was conveyed to both the prosecutor and the judge, which
proximately resulted in her increased bail (which she could not

post), her prolonged detention, and the requirement that she submit to two body scans, a drug test, and an invasive body cavity search.

Based upon the factual allegations of the complaint, White has adequately and plausibly pled that Wilber's knowing and intentional conduct violated her constitutionally protected rights – including her right to due process.

> Although the First Circuit has not yet addressed this issue, "every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative." Halsey v. Pfeiffer, 750 F.3d 273, 292 (3d Cir. 2014); see also Whitlock v. Brueggemann, 682 F.3d 567, 585-86 (7th Cir. 2012) (collecting cases). And, the First Circuit has emphasized in similar circumstances that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit" and that "[a]ctions taken in contravention of this prohibition necessarily violate due process." See Limone v. Condon, 372 F.3d 39, 45 (1st Cir. 2004) (affirming the denial of qualified immunity where officers developed a witness for prosecution that they knew "would perjure himself and falsely implicate three innocent men in" a murder); see also Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013); Haley v. City of Bos., 657 F.3d 39, 49-50 (1st Cir. 2011).
>
> Because Plaintiff alleges that Captain McKiernan knowingly created and used false evidence to convict him, the Court declines to dismiss Count II at this stage in the proceedings.

Alvarez v. City of Worcester, No. 4:20-40004-TSH, __ F. Supp. 3d
__, 2020 WL 1495885, at *3 (D. Mass. Mar. 27, 2020).  See also
Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000) ("It is
firmly established that a constitutional right exists not to be
deprived of liberty on the basis of false evidence fabricated by
a government officer.").

As the Court of Appeals for the Second Circuit has
recognized (repeatedly), a law enforcement officer's fabrication
of evidence is inconsistent with not only the Constitution, but
also firmly-held notions of justice and fundamental fairness.

> [T]he primary argument of Officer Lopez and the other
> defendants goes not to the genuineness of the fact
> issues, but to their materiality.  Each of the
> defendants insists that so long as there was probable
> cause for Alfred Ricciuti's arrest - independent of
> the allegedly fabricated evidence — the fabrication of
> evidence is legally irrelevant.  In essence, they
> argue that as long as the arrest complied with the
> Fourth Amendment, the Ricciutis can have no claim for
> post-arrest fabrication of evidence against them.
>
> This argument - an ill-conceived attempt to erect a
> legal barricade to shield police officials from
> liability - is built on the most fragile of
> foundations; it is based on an incorrect analysis of
> the law and at the same time betrays a grave
> misunderstanding of those responsibilities which the
> police must have toward the citizenry in an open and
> free society.  No arrest, no matter how lawful or
> objectively reasonable, gives an arresting officer or
> his fellow officers license to deliberately
> manufacture false evidence against an arrestee.  To
> hold that police officers, having lawfully arrested a
> suspect, are then free to fabricate false confessions

at will, would make a mockery of the notion that
Americans enjoy the protection of due process of the
law and fundamental justice.  Like a prosecutor's
knowing use of false evidence to obtain a tainted
conviction, <u>a police officer's fabrication and
forwarding to prosecutors of known false evidence
works an unacceptable corruption of the truth-seeking
function of the trial process</u>.

When a police officer creates false information likely
to influence a jury's decision and forwards that
information to prosecutors, he violates the accused's
constitutional right to a fair trial, and the harm
occasioned by such an unconscionable action is
redressable in an action for damages under 42 U.S.C. §
1983.

<u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 129-30 (2d Cir.

1997) (emphasis supplied; citations omitted).

## Conclusion

Little more need be said.  Time will tell whether the

evidence will support White's claims against Trooper Wilber.

But, at this preliminary stage of the litigation (when the court

must accept White's factual claims as true), it is plain that

the Second Amended Complaint adequately and plausibly alleges

the essential elements of viable claims against Wilber.

For the foregoing reasons, defendant Haden Wilber's motion to dismiss (document no. 42) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 17, 2020

cc:  Counsel of Record